# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ROBERT STOCES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:15-cv-277- DGW |
| | ) |
| SALEH OBAISI, DR. JILL WAHL, | ) |
| DENNIS LARSON and WEXFORD | ) |
| HEALTH SOURCES, INC., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**WILKERSON, Magistrate Judge:**

Pending before the Court is a Motion for Summary Judgment (Doc. 102) and a Motion to Strike (Doc. 116) filed by Defendants. For the reasons set forth below, the Motion for Summary Judgment is **DENIED** as to Defendants Obaisi, Wahl and Larson, but is **GRANTED** as to Defendant Wexford; the Motion to Strike is **GRANTED.**

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Robert Stoces filed a complaint on March 11, 2015 alleging violations of his rights under the Eighth Amendment, as well as Illinois state law, against three health care providers at Lawrence Correctional Center and Wexford Health Sources (Doc. 1).

Remaining before the Court are the following claims:

**Count 1:** Defendants Obaisi, Wahl, Larson and Wexford Health Services were deliberately indifferent to Plaintiff's serious medical needs when they failed to provide adequate medical care, including refusing or failing to order a colonoscopy;

**Count 3:** Defendants Obaisi, Wahl, Larson and Wexford committed

malpractice/were negligent in their care of Plaintiff.[1]

In February 2013, Stoces was diagnosed with colon cancer (Doc. 1, p. 12). Stoces claims Defendants refused to order diagnostic tests in a timely manner that were essential to detecting his colon cancer earlier; instead they insisted on a course of treatment that was ineffective (Doc. 1, p. 12).

Stoces was incarcerated at Lawrence Correctional Center ("Lawrence") at the time the events in question occurred. He first visited the healthcare unit at Lawrence about his bowel problems in January 2010 (Doc. 1, p. 8). At that time, Stoces was provided Metamucil (Doc. 103-1, ¶ 7). It is undisputed Stoces saw Defendant Obaisi (a medical doctor at Lawrence) twenty-two additional times between January, 2011 and July, 2012 (Doc. 103-1, ¶¶ 7-18, 20-21, 25-27, 29-36). Obaisi claims Stoces only stated he had constipation on two occasions (Doc. 103-1, ¶¶ 7, 27), and never complained of abdominal pain or blood in his stool (Doc. 103-1, ¶¶ 7-18, 20-21, 25-27, 29-36).

Conversely, Stoces alleges that from February 1, 2010 through December 21, 2010 he repeatedly requested a colonoscopy due to pain and a disruption in his normal bowel function (Doc. 113, p. 3). Stoces alleges Obaisi refused to order a colonoscopy due to costs, and several nurses told him Obaisi was not documenting Stoces' requests for a colonoscopy and related symptoms in his medical records (Doc. 113, p. 3). As a result, on December 21, 2010 Stoces went to the health care unit call line and asked that his request for a colonoscopy be documented in his medical file (Doc. 113, p. 3). Obaisi admits he saw Stoces six days later, but claims that is the first time a colonoscopy was requested (Doc. 103-1, ¶ 14). Obaisi denied the request on the grounds

---

[1] Stoces' counsel filed an amended complaint that excluded a conspiracy charge originally raised by Stoces. After the Court granted counsel's motion to withdraw, Stoces filed a motion to amend his complaint, attempted to reinstitute the conspiracy charge (Doc. 93). The Court denied the motion on the grounds allowing Stoces to amend his complaint would require the reopening of discovery at significant cost and time to Defendants and would unduly delay trial (Doc. 105, p. 4).

that Stoces was not alleging constipation, blood in his stool, or abdominal pain (Doc. 103-1, ¶ 14). Obaisi never ordered a colonoscopy.[2]

On August 2, 2012 Stoces was seen by Defendant Dr. Wahl. It is undisputed Stoces told Wahl he had blood in his stool and that she was aware Stoces had told the nurse practitioner the previous week that he had blood in his stool for over three months (Doc. 103-3, ¶ 4). Wahl stated in her declaration that the records indicated Stoces was instructed by the nurse to collect three stool samples, but only one fecal blood test had been documented in the file at that time (Doc. 103-3, ¶ 4). She admits, however, she has no knowledge about how many samples he actually collected (Doc. 103-3, ¶ 4), and Stoces states he collected at least five.

Dr. Wahl saw Stoces two weeks later for an unrelated dermalogical condition, and alleges Stoces did not report any blood in his stool, constipation or abdominal pain at that time (Doc. 103-3, ¶ 4). She saw him against a few days later, reviewed his blood tests, which were normal, and alleges Stoces again did not complaint of any constipation, abdominal pain or blood in his stool (Doc. 103-3, ¶ 4). Stoces disagrees, stating he complained about his "constant pain, bowel obstruction, and blood in his stool" each time he saw Dr. Wahl (Doc. 113, p. 12).

While Dr. Wahl saw Stoces several more times, she claims he did not report any blood in his stool again until September 27, 2012 (Doc. 103-3, ¶ 4). At which time, she ordered him to collect two more fecal samples (Doc. 103-3, ¶ 4). Wahl saw Stoces again several weeks later and did a rectal exam, noting that his stool was positive of occult blood (Doc. 103-3, ¶ 4). Dr. Wahl did not order a colonoscopy. Rather, she prescribed fiber and an anti-inflammatory suppository for

---

[2] Defendants argue Stoces admitted to having no recollection of any of his visits with Obaisi and that he does not deny the information contained in his medical records (Doc. 103, p. 14). While the three sentences Defendants cite to for this contention are contained in the deposition, Defendants completely ignore a plethora of other contrary statements by Obaisi. Given the context of the statements cherry picked by Defendants, the Court does not necessarily interpret them to be admissions by Stoces that he does not remember seeing Obaisi or that he has no recollection of those incidents. Further, the Court is not convinced the statement "the medical records speak for themselves" is an admission the records are accurate.

internal hemorrhoids, despite the fact that she did not feel any hemorrhoids during the exam (Doc. 103-3, ¶ 4). Dr. Wahl recommended follow up in one month to re-check Stoces' stool (Doc. 103-3, ¶ 4).

There is no evidence in the record that such a follow up ever took place. Stoces was not seen again until November 9, 2012—three-and-a-half months later—when he was seen by Defendant Dr. Larson (Doc. 103-4, ¶ 4). Dr. Larson alleges Stoces did not complain of constipation, blood in his stool or abdominal pain at the appointment (Doc. 103-4, ¶ 4). There is no indication that Dr. Larson rechecked Stoces stool as recommended by Dr. Wahl, despite declaring that he relies on his review of medical records when making medical decisions (Doc. 103-4. ¶ 3).

Dr. Larson conducted a review of Stoces' medical record the following month, and saw Stoces on December 13, 2012 to follow up on the blood in his stool (Doc. 103-4, ¶ 4). Larson admits Stoces told him at that appointment he had blood in his stool "since August 2012 and before" (Doc. 103-4, ¶ 4). Stoces admits he refused a rectal exam during that appointment, but explains his refusal was due to the need to have a bowel movement (Doc. 113, p. 12). He states he asked Dr. Larson to call him back to the health care unit for a rectal exam on another date, but Larson never did so (Doc. 113, p. 12). Dr. Larson stated that due to Stoces refusal of the rectal exam, he simply reordered fiber medication and indicated Stoces needed a follow up appointment in four to six weeks (Doc. 103-4, ¶ 4).

Stoces was seen by Dr. Shepherd a month later due to abdominal pain (Doc. 103-2). Dr. Shepherd ordered a colonoscopy (Doc. 103-2). The colonoscopy was performed five days later and Stoces was diagnosed with colon cancer; he subsequently underwent surgery to remove part of his colon (Doc. 103-2).

ANALYSIS

Summary judgment is proper only if the moving party can demonstrate there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). Any doubt as to the existence of a genuine issue of fact must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970); *Lawrence v. Kenosha Cnty.*, 391 F.3d 837, 841 (7th Cir. 2004).

A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Carett*, 477 U.S. 317, 323 (1986). A party asserting that a fact is genuinely disputed must support that assertion by citing to particular materials in the record or by showing that the materials in the record do not establish the absence of a genuine dispute. Fed. R. Civ. P. 56. If the non-moving party does not show evidence exists that would reasonably allow a fact-finder to decide in their favor on a material issue, the court must enter summary judgment against them. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

The Seventh Circuit has stated summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005)).

**I. Deliberate Indifference**

The Supreme Court has recognized that deliberate indifference to the serious medical needs of prisoners may constitute cruel and unusual punishment under the Eighth Amendment.

*Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In order to prevail on a claim for deliberate indifference to a serious medical need, however, there are "two high hurdles, which every inmate-plaintiff must clear." *Dunigan ex rel. Nyman v. Winnebago Cnty.*, 165 F.3d 587, 590 (7th Cir. 1999). First, the plaintiff must demonstrate he suffered from an objectively serious medical condition. *Id.* at 591-92. Second, the plaintiff must establish the individual prison officials were deliberately indifferent to that condition. *Id.*

With respect to the first requirement, minor aches and pain do not constitute a serious medical need, but "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain" constitute a serious medical need. *Hayes v. Snyder*, 546 F.3d 516, 522-23 (7th Cir. 2008) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)). In their Motion for Summary Judgment, Defendants do not address this first element, thus the Court considers the issue conceded. The question before the Court, therefore, is whether Defendants were deliberately indifferent to that medical need.

Proving deliberate indifference is difficult because prison medical professionals are entitled to deference unless no minimally competent professional would have responded similarly under the same circumstances. *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). Accordingly, a plaintiff must show more than simple medical malpractice. *Whiting v. Wexford Health Sources, Inc.,* 839 F.3d 658, 662 (7th Cir. 2016).

Disagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment is generally insufficient, by itself, to establish deliberate indifference. *Greeno v. Daley,* 414 F.3d 645, 653 (7th Cir. 2005). In other words,

federal courts will not interfere with a doctor's decision to pursue a particular course of treatment unless that decision represents so significant a departure from accepted professional standards or practices that it calls into question whether the doctor was actually exercising his professional judgment. *Pyles*, 771 F.3d at 409.

## Dr. Obaisi

Here, Stoces alleges Dr. Obaisi was deliberately indifferent to his complaints of abdominal pain and bleeding. Dr. Obaisi admits he saw Stoces on the following dates: February 1, 2010; February 11, 2010; February 26, 2010; June 7, 2010; June 28, 2010; July 21, 2010; December 6, 2010; December 27, 2010; January 24, 2011; March 3, 2011; April 1, 2011; May 2, 2011, June 3, 2011; July 5, 2011; October 31, 2011; December 5, 2011; December 19, 2011; March 2, 2012; April 18, 2012; May 16, 2012; May 30, 2012; July 12, 2012; and July 23, 2012 (Doc. 103-1, ¶¶ 7-18, 20-21, 25-27, 29-36). During those twenty-three visits, Obaisi claims Stoces only stated he had constipation on two occasions (Doc. 103-1, ¶¶ 7, 27), and never complained of abdominal pain or blood in his stool (Doc. 103-1, ¶¶ 7-18, 20-21, 25-27, 29-36).

Conversely, Stoces states from February 1, 2010 through December 21, 2010 he repeatedly requested a colonoscopy due to pain and a disruption in his normal bowel function (Doc. 113, p. 3; Doc. 103-6, 34:6-15, 40:22-42:4). Stoces alleges Obaisi refused to order a colonoscopy due to costs, and several nurses told him Obaisi was not documenting his requests for a colonoscopy and related symptoms in his medical records (Doc. 113, p. 3). As a result, on December 21, 2010 Stoces went to the health care unit call line and asked that his request for a colonoscopy be documented in his medical file (Doc. 103-6, 35:22-36:4). Obaisi admits that he saw Stoces six days later, but claims that is the first time a colonoscopy was requested and that he denied the request because Stoces was not alleging constipation, blood in his stool, or abdominal pain (Doc.

103-1, ¶ 14). Why Stoces would suddenly request a colonoscopy with no symptoms is not addressed.

Viewing the facts in the light most favorable to the non-moving party, it is certainly possible a jury could believe Stoces informed Dr. Obaisi of his symptoms on multiple occasions, and requested a colonoscopy several times. Thus, because material issues of fact exist regarding what Obaisi knew about Stoces' symptoms and whether his response to that information was deliberately indifferent, summary judgment is **DENIED.**

*Dr. Jill Wahl*

Doggedly persisting in a course of treatment known to be ineffective can qualify as deliberate indifference. *Greeno v. Dailey,* 414 F.3d 645, 655 (7th Cir. 2005) (citing *Kelley v. McGinnis,* 899 F.2d 612, 616–17 (7th Cir. 1990) (per curiam). Further, there is no requirement that a prisoner provide "objective" evidence of his pain and suffering—self-reporting is often the only indicator a doctor has of a patient's condition. *Greeno v. Dailey,* 414 F.3d at 655; *Cooper v. Casey,* 97 F.3d 914, 916–17 (7th Cir. 1996).

Here, it is undisputed that Dr. Wahl knew Stoces had been complaining of blood in his stool since at least May, (Doc. 103-3, ¶ 4). There is conflicting evidence as to when and how often Stoces reported symptoms of blood in his stool, constipation or abdominal pain at that time (Doc. 103-3, ¶ 4; Doc. 113, p. 12). Construing the facts in the light most favorable to Stoces, there is evidence he informed Dr. Wahl about his "constant pain, bowel obstruction, and blood in his stool" (Doc. 113, p. 12) each of the six times she saw him. Further, Dr. Wahl admits that a rectal exam showed his stool was positive of occult blood (Doc. 103-3, ¶ 4). Regardless, Dr. Wahl did not order a colonoscopy. Rather, she prescribed fiber, despite the fact that the medical records she states she relies on in making medical decisions (Doc. 103-3, ¶ 3) showed Stoces had been being

treated with fiber for constipation for over two years (Doc. 103-1, ¶ 12). Dr. Wahl further ordered an anti-inflammatory suppository for internal hemorrhoids, despite the fact that she did not feel any hemorrhoids during the exam (Doc. 103-3, ¶ 4).

Because material issues of fact exist as to what Dr. Wahl knew about Stoces' symptoms at the time she was treating him and whether she persisted in a course of treatment known to be ineffective, summary judgment is **DENIED.**

*Dennis Larson*

Similarly, the Court finds there is evidence upon which a jury could find Dr. Larson also persisted in an ineffective treatment, and therefore summary judgment is inappropriate. Dr. Larson saw Stoces for the next visit after Dr. Wahl found his stool was positive of occult blood (Doc. 103-4, ¶ 4). It is uncontested that Dr. Larson was aware of that positive test at the time of the visit but did not follow up regarding Dr. Wahl's findings for another five weeks (Doc. 103-4, ¶ 4). Larson admits that Stoces told him at the second appointment he had blood in his stool "since August 2012 and before" (Doc. 103-4, ¶ 4). Stoces admits that he refused a rectal exam during the appointment, but explains his refusal was due to the need to have a bowel movement (Doc. 113, p. 12). Stoces asked Dr. Larson to call him back to the health care unit for a rectal exam on another date, but Larson never did so (Doc. 113, p. 12). Rather, due to Stoces' refusal of the rectal exam, Dr. Larson simply reordered fiber medication and indicated Stoces needed a follow up appointment in four to six weeks (Doc. 103-4, ¶ 4).

Thus, because evidence exists upon which a jury could find Dr. Wahl persisted in the same course of treatment as his two predecessors, despite the fact that such treatment was known to be ineffective, summary judgment is **DENIED**.

**II. Policy or Practice Claim**

As for Defendant Wexford, corporations may be held liable for the promulgation of a policy or practice, if it causes an underlying constitutional violation. *Woodward v. Corr. Med. Serv. of Ill., Inc.,* 368 F.3d 917, 927 (7th Cir. 2004). The plaintiff, however, must present evidence of such a policy or practice[3] at the summary judgment stage and has the burden of showing that policy or custom was the moving force behind the alleged constitutional violation. *Grieveson v. Anderson,* 538 763, 771 (7th Cir. 2008). When alleging a policy exists as evidenced by a widespread practice, the Seventh Circuit has been clear that evidence of isolated acts is insufficient; rather the plaintiff must present evidence of a series of violations. *Palmer v. Marion County,* 327 F.3d 588, 596 (7th Cir. 2003) (citing *Jackson v. Marion County,* 66 F.3d 151, 152 (7th Cir. 1995)).

Here, Stoces has not met his burden of producing evidence of a policy or practice. In support of his position, Stoces points to a document attached to his original complaint he refers to as the "Wexford Rap Sheet" (Doc. 103-6, 144:6-146:1; Doc. 1-1, pp. 5-31). The document in question contains a summary of over fifty newspaper articles dated 2003-2011 (Doc. 1-1, pp. 5-31). While allegations of negligence by Wexford could be inferred, the Court does not see a basis for finding this document supports Stoces allegations of a policy or practice of Wexford denying services to save money.

Stoces additional claims are equally unsupported. Specifically, he references the experience of another inmate at Lawrence Correctional center whom he identifies only as "Professor" (Doc. 113, p. 7). Stoces claims doctors delayed a colonoscopy for Professor resulting

---

[3] There are three possible forms of unconstitutional policies or practices: (1) an express policy; (2) a widespread practice that constitutes a custom or usage even if informal in nature; and (3) an allegation that the injury was caused by a person with final policy making authority. *Palmer v. Marion County,* 327 F.3d 588, 594-95 (7th Cir. 2003). Here, Stoces appears to allege both an express policy exists and a practice.

in stage-4 cancer (Doc. 113, pp. 6-7). Even assuming the Court could consider this hearsay evidence, there is nothing other than conjecture to tie the decision not to provide Professor with a colonoscopy to a policy by Wexford. Further, Stoces' claim that nurses told him such a policy exists (Doc. 103-6, 148:16-22. 149:7-14) is not part of the court's record and therefore cannot form the basis for creating a genuine issue of material fact.[4]

Thus, there is no evidence before the Court upon which a jury could find a policy or widespread practice by Defendant Wexford of denying colonoscopies. Defendant Wexford's motion for summary judgment is therefore **GRANTED**, and Stoces' claims against Wexford are **DISMISSED with prejudice.**

### III. Medical Malpractice - Illinois Claims

To prove medical malpractice under Illinois state law, a plaintiff must show: (1) there was a standard of care by which to measure the defendant's conduct; (2) the defendant negligently breached that standard of care; and (3) the defendant's breach was the proximate cause of the plaintiff's injury." *Alm v. Loyola University Medical Center*, 866 N.E.2d 1243, 1248 (2007). While each element must be presented by expert testimony, whether there is a deviation from the standard of care and whether the deviation was a proximate cause are normally questions for the jury." *Aguilera v. Mount Sinai Hospital Medical Center,* 691 N.E.2d 1, 4 (1997).

Defendants' main argument is that Stoces does not have a qualified expert who can provide testimony on any of the three elements (Doc. 103, p. 20). Stoces, however, responds by stating that several of his treating physicians—specifically Dr. Shepherd and Dr. Paris—could testify as experts in this case (Doc. 113, p. 9). In order to qualify as an expert under Illinois state law, a

---

[4] Stoces' references regarding the nurses are merely hearsay statements contained in his response to the motion for summary judgment and his deposition testimony (Doc. 103-6, 148:16-22. 149:7-14). Stoces provides no further support. Stoces also references to a letter from the John Howard Association allegedly stating 60% of inmates in the Illinois Department of Corrections die from lack of proper medical care (Doc. 103-6, 149:19-150:3). He does not, however, provide the Court with this document or tie the improper medical care to a policy by Wexford.

physician must be (1) a licensed member of the school of medicine about which they propose to testify, and (2) must be familiar with the methods, procedures and treatments ordinarily observed by other physicians in the defendant physician's community or a similar community. *Sullivan v. Edward Hosp.*, 335 Ill.App.3d 265, 270 (2nd Dist. 2002).

Here, there is nothing before the Court that would suggest either Dr. Shepherd or Dr. Paris could not be qualified as an expert or that their testimony would not be helpful to Stoces' claims. Further, while Defendants' produce two experts, it is undisputed that neither expert reviewed Stoces' deposition, spoke with Mr. Stoces, or were subject to cross examination during deposition (Doc. 103-7). Based on Defendants own evidence, it appears their experts' opinions rely on limited and incomplete information, and it is unclear to the Court how their opinions might be influenced by the missing information. Thus, because the Court finds material issues of fact remain as to whether Defendants acted negligently, summary judgment is **DENIED**.

### III. Motion to Strike

Defendants filed their Motion for Summary Judgment (Doc. 103), to which Stoces filed a timely response (Doc. 113). Defendants then filed a Reply on January 8, 2018 (Doc. 106) and Stoces filed a Sur-Reply (Doc. 107). In response, Defendants filed a Motion to Strike the Sur-Reply.

Rule 7.1 of the Southern District of Illinois states expressly prohibits sur-replies. Defendants' Motion to Strike Plaintiff's sur-reply is therefore **GRANTED.**

### CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment is **DENIED** as to Defendants Obaisi, Wahl and Larson. The Motion for Summary Judgment is **GRANTED** as to

Defendant Wexford, and Defendant Wexford is therefore **DISMISSED with prejudice**. It is **FURTHER ORDERED** that the Motion to Strike is **GRANTED.**

**IT IS SO ORDERED.**

**DATED:   March 22, 2018**

_____
**DONALD G. WILKERSON**
**United States Magistrate Judge**